# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Stephen Edward Carter, Respondent.

Appellate Case No. 2015-001890

---

Opinion No. 27589
Submitted November 3, 2015 – Filed November 12, 2015

---

## DISBARRED

---

Lesley M. Coggiola, Disciplinary Counsel, and Barbara
M. Seymour, Deputy Disciplinary Counsel, both of
Columbia, for Office of Disciplinary Counsel.

Stephen Edward Carter, of Hilton Head Island, *pro se*.

---

**PER CURIAM:**   In this attorney disciplinary matter, respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary
Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court
Rules (SCACR).  In the Agreement, respondent admits misconduct and consents to
disbarment with conditions.  He requests the disbarment be imposed retroactively
to March 3, 2015, the date of his interim suspension. *In the Matter of Carter*, 411
S.C. 609, 769 S.E.2d 665 (2015).  We accept the Agreement and disbar respondent
from the practice of law in this state, retroactive to the date of his interim
suspension.  In addition, we impose the conditions as stated hereafter in this
opinion.  The facts, as set forth in the Agreement, are as follows.

# Facts and Law

Respondent was admitted to the South Carolina Bar in 1989.[1]  At the time of his interim suspension, respondent operated a solo practice on Hilton Head Island handling a variety of legal matters.

## Matter I

In May 2014, a circuit court judge forwarded ODC a motion filed by respondent in a civil case in which he admitted he had neglected the case and had failed to keep his clients informed of the status of the proceedings.  In response to the Notice of Investigation, respondent represented to ODC that his failing in the case resulted from depression, that he had been in touch with Lawyers Helping Lawyers, that he was getting the recommended treatment, and that his other cases were in order and unaffected by his condition.

Respondent proposed a deferred discipline agreement which was accepted by an Investigative Panel of the Commission on Lawyer Conduct (the Commission) on October 17, 2014.  In the deferred discipline agreement, respondent admitted to violations of the Rules of Professional Conduct and agreed to comply with certain terms and conditions, including completing the South Carolina Bar's Legal Ethics and Practice Program (LEAPP) Ethics School and Law Office Management School within nine months, seeking treatment with a psychologist, contacting his Lawyers Helping Lawyers' monitor on a weekly basis, and filing quarterly reports to the Commission for a period of two years.

On March 2, 2015, respondent self-reported that he had not complied with the terms of his deferred discipline agreement.  As a result of respondent's failure to comply with the terms of the deferred discipline agreement, the Investigative Panel terminated the agreement.

According to its terms,  allegations in the deferred discipline agreement were deemed admitted if respondent failed to comply with the agreement.  Those allegations which are now admitted are as follows:

> Respondent failed to diligently represent the defendants in a civil action filed in 2011 in Beaufort County.  Respondent was neglectful in failing to keep

[1] Respondent was admitted to the Ohio Bar in 1980.

his clients informed of the status of the proceedings, failing to return his clients' telephone calls, and failing to timely respond to Court-imposed deadlines, including failing to timely schedule mediation. In response to the plaintiff's motion for sanctions, respondent admitted his responsibility for the delays and withdrew as counsel from the case. The defendants obtained new counsel who was able to successfully resolve the matter.

Further, pursuant to the deferred discipline agreement, respondent is deemed to have admitted that his conduct violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (lawyer shall provide competent representation to client); Rule 1.2 (lawyer shall abide by client's decisions concerning objectives of representation and shall consult with client as to means by which they are to be pursued); Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing client); Rule 1.4 (lawyer shall keep client reasonably informed about status of matter); Rule 3.2 (lawyer shall make reasonable efforts to expedite litigation consistent with the interests of client); and 8.4(e) (it is professional misconduct for lawyer to engage in conduct that is prejudicial to the administration of justice).

## Matter II

In addition to reporting that he failed to comply with the terms of his deferred discipline agreement, respondent also self-reported that he had neglected other client matters. Specifically, respondent reported that he had neglected a legal matter for Client A who he represented in a breach of contract lawsuit arising from a real estate transaction. Respondent filed suit for Client A in 2009 and completed some discovery, however, he admitted he did not do all that he should have to prepare the case for trial, including failing to depose the defendants and failing to compel compliance with his discovery requests. Respondent admitted he took no steps to keep Client A informed of the status of the case. In particular, respondent did not inform Client A of the court date. The trial judge had to continue the matter as a result of respondent's self-report and anticipated interim suspension.

Respondent's self-report also included his neglect of a legal matter for Mr. and Mrs. Doe. Respondent represented the Does in defense of a breach of contract lawsuit filed against them in 2011. Although some discovery was completed, respondent admits that he did not do all that he should have to prepare the case for trial, including failing to depose the plaintiffs. Respondent took no steps to keep the Does informed of the status of their case. Respondent did not inform Mr. and

Mrs. Doe of the trial date. The trial judge had to continue the matter as a result of respondent's self-report and anticipated interim suspension.

Respondent admits his conduct in connection with Client A and Mr. and Mrs. Doe violated the following provisions of the Rules of Professional Conduct: Rule 1.2 (lawyer shall abide by client's decisions concerning objectives of representation and shall consult with client as to means by which they are to be pursued); Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing client); Rule 1.4 (lawyer shall keep client reasonably informed about status of matter); Rule 3.2 (lawyer shall make reasonable efforts to expedite litigation consistent with the interests of client); and 8.4(e) (it is professional misconduct for lawyer to engage in conduct that is prejudicial to administration of justice).

## Matter III

In his March 2, 2015, self-report and in a complaint filed by the Honorable Marvin H. Dukes, III, ODC was informed of a shortage in respondent's trust account. The shortage occurred in connection with respondent's representation of Client B and Client B's real estate companies. Specifically, Client B and Mr. Roe signed an escrow agreement naming respondent as escrow agent. On February 26, 2014, Mr. Roe wired $250,000.00 into respondent's trust account as an earnest money deposit in connection with a business transaction with Client B. On February 27, 2014, respondent disbursed $150,000.00 to Client B as authorized by the escrow agreement. Respondent was to hold the remaining $100,000.00 in trust pending completion of the business transaction.

Instead, on February 27, 2014, contrary to the terms of the escrow agreement, respondent issued and negotiated a check from his trust account payable to himself in the amount of $10,000.00. Respondent did not have funds on deposit in his trust account for this purpose. Other than a nominal amount, the only money on deposit in respondent's trust account at the time of this disbursement was the $100,000.00 escrowed funds for the Client B/Mr. Roe transaction. Respondent was not authorized by Client B or Mr. Roe to disburse $10,000.00 from those funds.

Between April and November 2014, respondent made twenty-one disbursements totaling over $90,000.00 from his trust account. Respondent did not have any funds in his trust account deposited for the purpose of making these disbursements. Respondent admits that the funds removed by these disbursements came from funds that he was supposed to be holding in trust for the Client B/Mr. Roe transaction and that he was not authorized to make any of these disbursements.

Respondent admits he used the misappropriated funds for office expenses, personal expenses, the purchase of a vehicle, and payment of alimony arrearages.

Ultimately, a dispute arose between Client B and Mr. Roe regarding the terms of their business transaction. In October 2014, Mr. Roe filed a lawsuit against Client B. Respondent filed an answer and counterclaim on behalf of Client B. On December 2, 2014, in response to a motion filed on behalf of Mr. Roe seeking return of the escrowed funds, Judge Dukes issued an order requiring respondent deliver to the clerk of court the $100,000.00 that should have been in his trust account pending the resolution of the lawsuit. Respondent did not comply.

On March 2, 2015, Judge Dukes held a contempt hearing. Respondent did not appear. The same day, Judge Dukes issued an order requiring respondent to deliver the funds to the clerk of court no later than 3:30 p.m. on March 6, 2015. Respondent did not comply. On March 12, 2015, Judge Dukes issued an order finding respondent in contempt of court for failing to deliver the funds as ordered and scheduling a hearing on March 30, 2015, for a final disposition. At that hearing, respondent appeared and represented to Judge Dukes that he had the ability to pay the funds if given sufficient time and he requested 150 days in which to pay the ordered funds. Judge Dukes granted respondent's request and held that he could purge himself of contempt of court by paying $100,000.00 plus interest to the clerk of court and $6,064.98 to opposing counsel for attorney's fees.

Respondent did not pay any funds to the clerk of court within 150 days. On June 29, 2015, Judge Dukes held another hearing. At that hearing, respondent represented to Judge Dukes that he could pay $5,000.00 in thirty days and that he could pay the obligation in full by the end of the year. Without issuing a written order, Judge Dukes continued the matter until July 28, 2015, to allow respondent to pay $5,000.00 and work out a payment plan for the remaining funds.

By signing this Agreement for Discipline by Consent and the affidavit required by Rule 21, RLDE, respondent represents to the Court that he has the financial ability to make the $5,000.00 payment as promised and to pay the remaining balance by the end of 2015.

In connection with this matter, respondent admits his conduct violated the following provisions of the Rules of Professional Conduct: Rule 1.15(a) (lawyer shall hold property of clients or third persons that is in lawyer's possession in connection with a representation separate from lawyer's own property); Rule 1.15(g) (lawyer shall not use or pledge any entrusted property to obtain credit or

other personal benefit for lawyer or any person other than the legal or beneficial owner of that property); Rule 3.4(c) (lawyer shall not knowingly disobey an obligation under the rules of a tribunal); Rule 8.4(b) (it is professional misconduct for lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects); Rule 8.4(d) (it is professional misconduct for lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation); and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct prejudicial to administration of justice).

Respondent admits that by his conduct in these matters, he is subject to discipline pursuant to the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (it shall be ground for discipline for lawyer to violate Rules of Professional Conduct).

## **Conclusion**

We accept the Agreement for Discipline by Consent and disbar respondent from the practice of law in this state, retroactive to March 3, 2015, the date of his interim suspension.[2] *In the Matter of Carter*, supra. In addition, the following conditions are imposed:

1. within thirty (30) days of the date of this opinion, respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission;[3]

2. by December 31, 2015, respondent shall pay restitution (including interest) to Mr. Roe, attorney's fees in connection with the Client B/Mr.

---

[2] Respondent's disciplinary history includes a confidential admonition issued in 2013. *See* Rule 7(b)(4), RLDE ("[a]n admonition may be used in subsequent proceedings as evidence of prior misconduct solely upon the issue of sanction to be imposed.").

[3] This obligation is separate and apart from any obligation to reimburse the Commission for the Receiver's expenses. Respondent's obligation to pay the Receiver's expenses will be determined by the Court at the time of the termination of the Receiver's appointment.

Roe matter, and any other fees, fines, or awards ordered by Judge Dukes in connection with the Client B/Mr. Roe matter;[4]

3. respondent shall reimburse the Lawyers' Fund for Client Protection (Lawyers' Fund) for any claims paid on his behalf prior to seeking readmission;[5] and

4. respondent shall complete the South Carolina Bar's Ethics School, Trust Account School, and Law Office Management School prior to seeking readmission.

Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**DISBARRED.**

**TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.**

---

[4] In the meantime, if Judge Dukes or any other judge orders respondent to pay funds related to the Client B/Mr. Roe matter sooner than December 31, 2015, respondent understands he must comply with that order, notwithstanding the terms of the Agreement or this opinion. Further, respondent understands that the Agreement does not preclude Judge Dukes or any other judge from ordering his incarceration for his conduct in connection with the Client B/Mr. Roe matter.

[5] If the Court orders the Lawyers' Fund to pay the Receiver's expenses, respondent's obligation to reimburse the Lawyers' Fund shall be determined by the Court at the time of the termination of the Receiver's appointment.